**J. A. RAYBOURN et al., Appellants,**

**v.**

**Gaston HOWARD, Appellee.**

Court of Appeals of Kentucky.

Nov. 15, 1957.

Lasserre Bradley, Charles Wylie, Lexington, for appellants.

Robert Odear, Charles Landrum, Lexington, for appellee.

H. R. Wilhoit, R. C. Littleton, Grayson, for appellants.

Gardner & Gardner, W. Major Gardner, West Liberty, for appellee.

CAMMACK, Judge.

This case is before us on a motion for an appeal from a judgment in the amount of $1,300 on a verdict in favor of the appellee, Gaston Howard, in an action instituted by him against the appellants, J. A. Raybourn and Rosewood Raybourn. The appellee sought to recover damages to his truck arising out of a collision in which his vehicle and one owned by J. A. Raybourn were damaged and Russell Raybourn, driver of the latter's vehicle, was killed. The jury found nothing on the cross-claim of J. A. Raybourn of $600 for his truck and that of the representative of Russell Raybourn's estate for $50,990.

The appellants assert the following errors: (1) improper instructions were given; (2) the argument of appellee's counsel and the admission of incompetent evidence were prejudicial; and (3) the appellants' motion to set aside the swearing of the jury because of misconduct on the part of a juror should have been sustained. We are sustaining the motion for an appeal because we think the last contention is well grounded. We shall confine our discussion of the case mainly to this question.

The collision occurred during the afternoon of September 16, 1955, on a sharp curve between Grayson and Sandy Hook. The appellee was driving his two-ton flat-bed truck south toward Sandy Hook and the deceased was driving J. A. Raybourn's panel truck north toward Grayson at the time of the collision. If both drivers had been observing traffic regulations, Howard would have been in the outside lane and the deceased in the inside lane of the curve. Howard and William Adkins, who was a passenger in his truck, were the only surviving eyewitnesses and both stated that Russell Raybourn was driving on the wrong side of the road at the time of the collision. Their statements indicate that Raybourn had lost control of the panel truck in negotiating the curve. Neither of these witnesses saw the panel truck until an instant before the crash, and when it was in their path. There was evidence that the view from Howard's direction was unobstructed for a distance of 150 feet. Howard and his passenger said that Raybourn was going fast and that their truck was traveling about 30 or 35 miles per hour.

The question of whether Russell Raybourn was drinking on the afternoon of the accident pervaded the whole case. The appellee's counsel questioned Dan Stevens, a witness who had ridden with the deceased in his truck several hours before the accident, relative to his opinion on whether the deceased had been drinking. Stevens did not answer the query but to successive questions on the point responded: "Well, driving fast," "He was driving fast," "Nothing

but just driving fast." The trial judge then admonished the jury: "That won't be considered by the jury for any purpose whatever. The question of whether he was driving fast up Sandy won't be considered for any purpose whatever."

Later, during a recess, J. A. Raybourn saw one of the jurors talking to the witness, Stevens, out of the presence of the court and counsel. Raybourn said Stevens was back against the wall in the corridor of the courthouse and the juror's back was toward Raybourn, and that the juror asked Stevens whether "he" (apparently meaning Russell Raybourn) was drunk and if "he" had any whiskey. J. A. Raybourn stated further that when the juror turned and saw him, the juror took Stevens by the arm and walked away. Raybourn also saw another juror talking to the wife of the appellee during a recess. A ruling on a motion to have the swearing of the jury set aside because of these occurrences was postponed until the following day. A question was raised concerning interrogation of the witness and the judge said that he would interrogate him.

In overruling the motion to set aside the swearing of the jury on the following day, the trial judge said that the sheriff could not locate Stevens the preceding afternoon but had sent word to him to return because the judge wanted to talk with him. The trial judge said further that Stevens came to his home around five in the morning and that Stevens told him, after being admonished as to his oath, that he had told the juror he did not know anything more than he had told in open court.

■■ We believe the motion to set aside the swearing of the jury should have been sustained. It was established that one of the jurors talked with the appellee's witness during a recess, and although this witness said he only repeated his previous testimony, that testimony had been ruled incompetent. It was highly improper, to say the least, for the juror to solicit privately information from this witness about whether Russell Raybourn was drinking. The trial judge should have examined the juror as well as the witness, preferably before counsel, in ascertaining whether the misconduct established was prejudicial. See 89 C.J.S. Trial § 461.

■ Whether a mistrial should be declared upon the showing of misconduct of one of the jurors is generally regarded as a matter within the discretion of the trial court. 53 Am.Jur., Trial, Section 907. However, private communications between jurors and witnesses should not be permitted because the law seeks to insure that jurors be kept free of influences tending to prejudice them for or against either party. Counsel for the appellee were overzealous in their efforts to emphasize the question of whether Russell Raybourn was drinking during the afternoon of the collision. On several occasions objections were sustained to hearsay responses of witnesses to questions about his drinking. This situation probably prompted, but would not warrant, the efforts of a juror to pursue his own investigation of the question.

■ The appellants introduced in evidence estimates of the cost of repairing the appellee's truck. The appellee introduced evidence of the value of the truck immediately before and after the accident. The instructions based damages on the value of the truck immediately before and immediately after the accident and limited them to the amount claimed by the appellee. The appellants argue that the instructions were erroneous because they allowed the jury to return a verdict for damages in excess of the reasonable cost of repair. We believe that the instruction on damages was proper. Vaughn v. Taylor, 288 Ky. 558, 156 S.W.2d 836; see also Stanley's Instructions to Juries, Section 321.

■ The appellants argue also that there should have been an instruction on the duty of the appellee to sound his horn. There

was no evidence tending to indicate that the accident could have been avoided by the sounding of a horn. We do not believe that the statutory duty to sound a horn should be interpreted as extending to cover the emergency situation presented in this case, especially since there was an unobstructed view for 150 feet (see KRS 189.410). It was proper to refuse to instruct on such a duty.

The judgment is reversed and case remanded for proceedings consistent with this opinion.